UNITED STATES BANKRUPTCY COURT

IN AND FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| **PENNY MAE SAWICKI,** | ) | Chapter 7 proceedings |
| | ) | |
| | ) | Case No. 2-07-bk-3493-CGC |
| | ) | |
| | ) | **UNDER ADVISEMENT DECISION** |
| | ) | **RE: U.S. TRUSTEE'S MOTION** |
| **Debtor.** | ) | **TO DISMISS CASE UNDER** |
| | ) | **SECTION 707(b)(2)** |
| _____ | ) | |

**I.     Factual Background**

Debtor Penny Mae Sawicki filed a voluntary petition under Chapter 7 of the U.S. Bankruptcy Code on July 23, 2007. Debtor owns one vehicle, a 2001 Chevrolet Malibu, free of liens and without a loan or lease payment. On Form 22A, Part V. Calculation of Deductions Allowed under § 707(b)(2), No. 23, Debtor included a $471.00 per month deduction for ownership expense. On October 29, 2007, the U.S. Trustee filed a Motion to Dismiss pursuant to 11 U.S.C. § 707(b)(2) claiming Debtor has primarily consumer debts and has net disposable income over a sixty-month period that exceeds $10,000. Debtor responded to the Motion to Dismiss on November 18, 2007, and the U.S. Trustee filed a Legal Memorandum in Support of the Motion to Dismiss on November 28, 2007. The determinative issue is whether Debtor may claim the $471.00 per month deduction.

**II     Analysis**

   **A.     The Parties' Positions**

Under 11 U.S.C. §707(b) (2)(A)(ii)(I) the "debtor's monthly expenses shall be the debtor's

*applicable* monthly expense amounts specified under the National Standards and Local Standards. . . ." (emphasis added). In this case, the U.S. Trustee argues that Debtor's vehicle ownership expense of $471.00 should not be included in her calculated monthly expenses because she has no loan or lease payment obligation. The U.S. Trustee relies on the Internal Revenue Manual (IRM), 5.8.5 Financial Analysis, for a determination that Debtor is entitled only to a $200.00 monthly allowance under the vehicle ownership expense rather than a $471.00 expense allowance. The $200.00 is allowed under IRM (Internal Revenue Manual) 5.8.5 for vehicles, such as debtor's, that are not encumbered with a loan or lease and are over six years old and/or have a reported 75,000 miles of usage. In keeping with the stated purpose of the Bankruptcy Abuse Prevention and Consumer Protection act of 2005 (BAPCPA) of rectifying perceived abuses, the U.S. Trustee concludes that allowing Debtor to deduct from her disposable income a fictional ownership gives her a windfall at the expense of her unsecured creditors.

Debtor counters the U.S. Trustee's argument by claiming that the literal words or plain meaning of §707(b) supports a conclusion that a debtor should be entitled to claim the full ownership expense of a vehicle, even though the vehicle is free and clear of any loan or lease. Debtor relies on *Collier on Bankruptcy* for the premise that the vehicle ownership allowance specified in the standards is the minimum amount to be deducted for the expense of car ownership, rather than any remaining car payments on a vehicle. Debtor also relies on Judge Randolph J. Haines' decision in *In re Chamberlain*, 369 B.R. 519 (Bankr. D. Ariz. 2007), for the basis of his argument that nothing in the Bankruptcy Code directs a debtor to any IRS publication, which is used by IRS employees to decide an amount owed in an outstanding tax debt, for an interpretation of how to apply §707(b) standards.

B.       Other Court Decisions

At least twenty-seven bankruptcy courts have found that debtors who have no car payments still are entitled to a vehicle ownership deduction[1] with at least five courts within the Ninth Circuit finding in favor of the debtor on this issue.[2] In analyzing §707(b) several courts have found that the term "applicable monthly expenses" cannot be interpreted to mean the same as "actual monthly expenses." *In re Demonica,* 345 B.R. 895 (Bankr. N.D. Ill. 2006); *See also In re Swan*, 368 B.R. 12 (Bankr. N.D. Cal. 2007); and *In re Chamberlin,* 369 B.R. 519 (Bankr. D. Ariz. 2007). Courts then turn to the statute to determine how and if to use the IRS's financial analysis. The *Fowler* court notes that in the text of BAPCPA Congress did not refer to the IRS's financial analysis for determining expense allowances as it had in previous versions of the bill and as a result finds the

---

[1] *See In re Demonica,* 345 B.R. 895 (Bankr. N.D. Ill. 2006); *In re Fowler,* 349 B.R. 414 (Bankr. D. Del. 2006); *In re Hartwick,* 352 B.R. 867 (Bankr. D. Minn. 2006) (overturned by *Fokkena v. Hartwick*, 373 B.R. 645 (D. Minn. 2007)); *In re Haley,* 354 B.R. 340 (Bankr. D. N.H. 2006); *In re McIvor,* 2006 WL 3949172 (E.D. Mich. 2006); *In re Naslund,* 359 B.R. 781 (Bankr. D. Mont. 2006); *In re Grunert,* 353 B.R. 591 (Bankr. E.D. Wis. 2006), *overruled by In re Ross-Tousey,* 368 B.R. 762 (E. D. Wis. 2007); *In re Prince,* 2006 WL 3501281 (Bankr. M.D. N.C. 2006); *In re Wilson,* 356 B.R. 114 (Bankr. D. Del. 2006); *In re Zak,* 361 B.R. 481 (Bankr. N.D. Ohio 2007); *In re Sawdy,* 362 B.R. 898 (Bankr. E.D. Wis. 2007); *In re Crews,* 2007 WL 626041 (Bankr. N.D. Ohio 2007); *In re Enright,* 2007 WL 748432 (Bankr. M.D. N.C. 2007); *In re Ragle,* 2007 WL 1119632, *4-5 (Bankr. E.D. Ky. 2007); *In re Billie,* 367 B.R. 586 (Bankr. N.D. Ohio 2007); *In re Watson,* 366 B.R. 523 (Bankr. D. Md. 2007); *In re Zaporski,* 366 B.R. 758 (Bankr. E.D. Mich. 2007); *In re Swan,* 368 B.R. 12 (Bankr. N.D. Cal. 2007); *In re Chamberlain,* 369 B.R. 519 (Bankr. D. Ariz. 2007); *In re Lynch,* 368 B.R. 487 (Bankr. E.D. Va. 2007); *In re Armstrong,* 370 B.R. 323 (Bankr. E.D. Wash. 2007); *In re Vesper*, 371 B.R. 426 (Bankr. D. Alaska 2007); *In re Barrett*, 371 B.R. 855 (Bankr. S.D. Ill. 2007); *In re Wilson*, 373 B.R. 638 (Bankr. W.D. Ark. 2007); *In re Scarafiotti*, 375 B.R. 618 (Bankr. D. Colo. 2007); *In re Hice*, 376 B.R. 771 (Bankr. D. S.C. 2007); *In re Moorman*, 376 B.R. 694 (Bankr. C.D. Ill. 2007); *In re Buck*, 2007 WL 4418145 (Bankr. E.D. Va. 2007)

[2] *See In re Naslund,* 359 B.R. 781 (Bankr. D. Mont. 2006); *In re Swan,* 2007 WL 1146485 (Bankr. N.D. Cal. 2007); *In re Chamberlain,* 369 B.R. 519 (Bankr. D. Ariz. 2007); *In re Armstrong,* 370 B.R. 323 (Bankr. E.D. Wash. 2007); *In re Vesper*, 371 B.R. 426 (Bankr. D. Alaska 2007).

change shows Congress's intent that the courts not be bound by the IRM, but that they look only to the amounts set forth in the Local Standards. *In re Fowler*, 349 B.R. at 419. Other courts have reached a similar conclusion, determining that the IRM is not applicable. *See In re Swan,* 368 B.R. at 19; *In re Armstrong*, 370 B.R. at 33; and *Chamberlin*, 369 B.R. 519 at 525. Moreover, multiple courts have found that the statute contains no directive to use the Local Standards as a cap. *See In re Naslund; In re Fowler*, 349 B.R. at 418*;* and *Chamberlin,* 369 B.R. 524 at 525. In the end, these courts found that a debtor can own a vehicle free and clear and still claim a deduction under §707(b).

Conversely, at least sixteen bankruptcy courts and two district courts have found that a debtor is not entitled to the deduction if he owns a vehicle free and clear[3] with at least four courts within the Ninth Circuit finding that a debtor is not entitled to a deduction if a vehicle is owned free and clear.[4] *In re Ross-Tousey*, determined that simply because Congress used two different adjectives does not mean that the two terms "applicable" and "actual" must have opposite meanings. According to *Ross-Tousey*, the term "applicable" may mean that the ownership expense is only applicable if the debtor makes a loan or lease payment on a vehicle and the amount of the ownership

---

[3] *See In re Hardacre,* 338 B.R. 718 (Bankr. N.D. Tex. 2006); *In re McGuire,* 342 B.R. 608 (Bankr. W.D. Mo. 2006); *In re Lara,* 347 B.R. 198, (Bankr. N.D. Tex. 2006); *In re Barraza,* 346 B.R. 724 (Bankr. N.D. Tex. 2006); *In re Wiggs,* 2006 WL 2246432 (Bankr. N.D. Ill. 2006); *In re Oliver,* 350 B.R. 294 (Bankr. W.D. Tex. 2006); *In re Carlin,* 348 B.R. 795 (Bankr. D. Or. 2006); *In re Harris,* 353 B.R. 304 (Bankr. E.D. Okla. 2006); *In re Devilliers,* 358 B.R. 849 (Bankr. E.D. La. 2007); *In re Slusher,* 359 B.R. 290 (Bankr. D. Nev. 2007); *In re Ceasar,* 364 B.R. 257 (Bankr. W.D. La. 2007); *In re Howell,* 366 B.R. 153 (Bankr. D. Kan. 2007); *In re Pampas,* 369 B.R. 290 (Bankr. M.D. La. 2007); *In re Ross-Tousey,* 368 B.R. 762 (E.D. Wis. 2007); *In re Talmadge*, 371 B.R. 96 (Bankr. M.D. Pa. 2007); *In re Cole*, 371 B.R. 454 (Bankr. W.D. Wash. 2007); *Fokkena v. Hartwick*, 373 B.R. 645 (D. Minn. 2007); *In re Garcia*, 2007 WL 2692232 (Bankr. D. Ariz. 2007); *In re Brown*, 376 B.R. 601 (Bankr. S.D. Tex. 2007).

[4] *See In re Carlin,* 348 B.R. 795 (Bankr. D. Or. 2006); *In re Slusher*, 359 B.R. 290 (Bankr. D. Nev. 2007); *In re Cole*, 371 B.R. 454 (Bankr. W.D. Wash. 2007); *In re Garcia*, 2007 WL 2692232 (Bankr. D. Ariz. 2007).

deduction is to be determined by the applicable local standards. *Ross-Tousey*, 368 B.R. at 765. The court in *In re Canales*, 377 B.R. at 665, finds that the terms "applicable" and "actual" are not interchangeable, but rejects the conclusion that the two terms must be wholly exclusive of each other. The *Canales* court found that the term "applicable" requires that the debtor make some lease or loan payment to be entitled to a deduction for transportation ownership expenses. The court in *In re Carlin* determined that the use of the word "applicable" in §707(b)(2)(A)(ii)(I) limits the allowable vehicle operating expense to individuals who are making payments on a lease or secured debt relating to the vehicle. *In re Carlin*, 348 B.R. at 798; *See also In re Slusher,* 359 B.R. at 309; and *In re Cole*, 371 B.R. at 459. Under the rulings of these courts, a debtor must have either loan or lease payments on the vehicle to claim a deduction under §707(b).

    C.    *In re Ransom*

The Bankruptcy Appellate Panel for the Ninth Circuit ("BAP") recently considered the issue in the context of a Chapter 13 plan confirmation rather than dismissal under Section 707(b). *In re Ransom,* 2007 WL 4625248 (9th Cir. BAP). The BAP held that in determining projected disposable income for purposes of Chapter 13 plan confirmation, a debtor is not able to deduct a vehicle ownership expense pursuant to § 707(b)(2)(A)(ii)(I) when a debtor owns the vehicle free and clear of any liens or encumbrances. (Although *Ransom* deals with the confirmation of a plan under Chapter 13, it is instructive in Chapter 7 cases because §1325 uses the means test under §707(b)(2)(A) to determine the debtor's projected disposable income.)

The BAP reasoned that although Congress has deemed the expense of owning a car to be a basic expense that debtors can deduct in calculating what they can afford to pay their creditors, in making the calculation what is important is not how many cars they own, but whether they have a

payment and are able to make payments to the creditors. The BAP relied on *In re Ross-Tousey*, 368 BR. at 766, for the premise that the statute is concerned with protecting the debtor's ability to continue to own a car and that when a debtor has no expense there is no need for a deduction.

The BAP, however, failed to address the point made *In re Fowler* that Congress did not refer to the IRS's financial analysis (found in the Internal Revenue Manual (IRM)) in the final bill that passed under BAPCPA for determining expense allowances, as it had in previous versions of the bill. *Fowler* logically concluded that removal of the reference is indicative of Congressional intent that courts should not be bound by the IRM. The BAP does note in footnote 18 that Congress looked to the IRS Manual for definitions of certain terms including "necessary expenses" and that Congress also cited to the Manual in describing the Local Standards. As pointed out by *In re Swan*, 368 BR. at 19, there is a substantial difference between relying on the IRM for definitions and relying on the IRM, specifically § 5.8.5.5.2.3, for determining how an expense should be calculated under § 707(b)(2)(A)(ii)(I). To reach the BAP's conclusion in *Ransom*, a court would have to adopt the wholesale language of the IRM. Even the BAP in footnote 8 concedes that although the Manual is helpful in some contexts it does not give meaning to the statute itself.

The BAP further states in footnote 8 that the statutory language plainly read does not allow the debtor to deduct a vehicle ownership expense when he has no loan or lease payment. The BAP, without basis reads the term "applicable" as indicating that the deduction of the monthly expense under the Local Standard only becomes relevant when the debtor has such an expense. The BAP then provides a dictionary definition of the word "applicable" as "capable of or suitable for being applied." Based on the dictionary definition the BAP argues that if a debtor does not make a lease or loan payment the vehicle ownership expense allowance is not capable of being applied and then

concludes that such an allowance would be reading "applicable right out of the Bankruptcy Code.

This court concludes that the BAP's analysis is flawed.[5] The BAP has developed a definition for "applicable" that is without a principled basis and glosses over what has been the heart of the controversy. The BAP fails to address why Congress felt it was necessary to identify two separate expense deductions under §707(b)(2)(A)(ii)(I). The BAP fails to address why if only actual expenses are to be used in considering the vehicle ownership deduction Congress explicitly separated "applicable monthly expense amounts specified under the National Standards and Local Standards" from actual monthly expenses for the categories specified as "Other Necessary Expenses" in the statute.

**D.     This Court's Analysis**

The starting point for statutory interpretation is a review of the language used by Congress in the current version of the law. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). Where the text is plain, the court is to apply the statute as written, unless the application would lead to absurd results. *Lamie v. U.S. Trustee*, 540 U.S. 526 (2004). Meaning must be given to a statute's every word. *Miller v. United States*, 363 F.3d 999, 1008 (9th Cir. 2004). A subsection of a statute is defined in the context of the entire statute and the statutory scheme as a whole. *In re Rufener Const., Inc.*, 53 F.3d 1064 (9th Cir. 1995).

Section 707(b)(2)(A)(ii)(I) reads in part:

> [t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor

---

[5]The BAP has certified the issue for consideration by the Ninth Circuit. *2007 WL 4625249*.

resides.

A plain reading of §707(b)(2)(A)(ii)(I) leads to the conclusion that the phrase "applicable monthly expense amounts" and "actual monthly expenses" are two separate items requiring two separate types of calculations for expense deductions under the Means Test. Contrary to what other courts have suggested, including *In re Ross-Tousey*, the use of the two different adjectives, "applicable" and "actual", indicates that Congress intended for the two terms to have different if not opposite meanings. In support of the separate definitions is legislative history surrounding the enactment of the BAPCPA. Congress's omission, in the final version of the BAPCPA bill that was passed, of any reference to the IRS financial analysis for determining expense allowances and the inclusion of the term "actual expenses" for determining other necessary expenses shows the intent by Congress to differentiate between "applicable" monthly expenses and "actual" monthly expenses.

For these reasons, this Court is of the view that the decisions supporting the Debtor's position are better reasoned and more closely in tune of the language of the statute, taken as a whole. However, the Court also believes that decisions of the BAP that are "on point" and not "meaningfully distiguishable"[6] should be followed and treated as precedential even where the trial court disagrees with the BAP's analysis. Here, even though the issue addressed in *Ransom* arose in the context of Chapter 13 confirmation and not a motion to dismiss under Section 707(b), the statute being construed is identical in both instances. Therefore, although the contexts are different, they are not "meaningfully distinguishable" in the legal sense.[7] Therefore, the Court will be bound

---

[6] In re Muskin, Inc., 151 B.R. 252,253 (Bankr. N.D. Cal 1993)

[7] This court thoroughly agrees with the discussion of Judge Jaroslovsky in *Muskin* which is worthy of extended quotation:
"I also note that the case law as to the binding nature of Appellate Panel decision is wildly inconsistent. The Appellate Panel has of course stated that its decisions are binding on all

bankruptcy judges in the circuit. *Philadelphia Life Ins. Co. v. Proudfoot*, 144 B.R. 876 (9th Cir.BAP 1992). The Court of Appeals has expressed uncertainty as to this proposition. *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir.1990) (concurring opinion). Some bankruptcy judges have held that all Appellate Panel decisions are binding on them (*In re Globe Illumination Co.*, 149 B.R. 614 (Bankr.C.D.Cal.)), while others have held that the decision is only binding if it arose in the same district. *In re Crook*, 62 B.R. 937 (Bkrtcy. D. Or.1986). Many bankruptcy judges refuse to consider any Appellate Panel decision binding on them. See March and Obregon, "Are BAP Decisions Binding on Any Court?" 18 Cal.Bankr.J. 189 (1990). There is a simple reason for the disagreement over the binding nature of Appellate Panel decisions; bankruptcy appeals may go either to the Appellate Panel or the district court. Thus, the Appellate Panel cannot, in many cases, enforce its views as to the binding effect of its own decisions. Since bankruptcy judges do not know at the time they make a decision which court will hear it, and since few district courts will consider themselves bound by an Appellate Panel decision, it is no surprise that many bankruptcy judges feel free to disregard Appellate Panel decisions.

It is entirely legitimate for a bankruptcy court to feel unbound by both a published district court opinion from the same district and an Appellate Panel decision where the two conflict. In such cases, the bankruptcy court has no way of knowing which court will hear the appeal and must therefore decide the issue on the merits rather than *stare decisis*. Moreover, *the litigants know* that there is a conflict, which will have to be resolved by the Court of Appeals, so that the parties are not deprived of the element of predictability when the bankruptcy judge decides the issue on the merits.

However, it is in my opinion wrong, and in some sense shameful, for a bankruptcy judge to feel free to disregard an Appellate Panel decision in the absence of a conflicting ruling by the district court. When a bankruptcy judge disregards an Appellate Panel decision on his or her own, merely because he or she disagrees with it, that bankruptcy judge is letting his or her ego interfere with the system itself.

All trial judges, to be effective, must have strong egos. Without a strong ego, it is almost impossible to make the difficult decisions which must be made ten times a day by bankruptcy judges. A judge with no confidence in his or her ability to distill the facts and correctly apply the law will constantly vacillate and avoid hard decisions, to the great frustration of the litigants and detriment of the court system, as matters become logjammed at the trial level. However, every judge's ego must be tempered with the knowledge that he or she was not appointed to impress his or her own ideas of what is right on the world, but rather to make the legal system work efficiently and justly.

When a judge refuses to follow an Appellate Panel decision, he or she is acting detrimentally to the bankruptcy system for two reasons. First, he or she is wasting a valuable resource. Appellate Panel judges are ordinary bankruptcy judges who, in addition to their regular duties, have volunteered to grapple with complex issues and reach reasoned decisions which not only resolve the dispute of the litigants but provide guidance for all litigants in the circuit. Ego aside, there is no good reason why a bankruptcy judge should want to spend hours struggling with a complicated and thorny issue when three other bankruptcy judges have already done the same thing, reached a conclusion, and published a decision for the benefit of all.

by *Ransom*.

    For the foregoing reasons, the Motion to Dismiss will be granted. Counsel for the United States Trustee is to submit a form of order.

Dated: February 12, 2008

                                                             Charles G. Case II
                                                             United States Bankruptcy Judge

---

Second, and more importantly, a bankruptcy judge who feels free to disregard Appellate Panel decisions deprives every attorney in his or her territory of the ability to predict the outcome of a bankruptcy dispute, at least at the trial court level. It is the attorneys, and not the judges, which make any legal system work by counseling their clients and crafting compromises so that only a small portion of potential disputes ever actually come before the judge for adjudication. Published court decisions, whether favorable or unfavorable to a particular position, are the tools a competent lawyer uses in advising his or her clients. The bankruptcy judge who refuses to feel bound by Appellate Panel decisions takes this tool away from the attorneys and thereby harms the system.
    I frequently disagree with Appellate Panel decisions, and have not been afraid to say so. I disagree quite strongly with the Appellate Panel decision in *Enserv*. However, for the reasons I have stated above I will not disregard it. I will not give my personal opinion on a legal issue greater weight than an Appellate Panel decision because to do so would waste the efforts of the Appellate Panel judges and make the outcome of cases in my court more unpredictable.
    Accordingly, I issue this decision (and depart from the normal third person form of rendering it) to make it clear that in cases before me Ninth Circuit Appellate Panel decisions are binding, if only because I say so."

COPY of the foregoing mailed by the BNC and/or
sent by auto-generated mail to:

Larry Watson, Esq.
**OFFICE OF THE US TRUSTEE**
230 N. First Avenue, Ste. 204
Phoenix, AZ 85003

Diane Mann, Trustee
P.O. Box 12970
Scottsdale, AZ 85267-2970

Peter Gustafson
**GUSTAFSON LAW OFFICE, P.L.L.C.**
18001 North 79th Avenue, #B-35
Glendale, AZ 85308
Attorney for the Debtor(s)